UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Independent School District No. 283,  Civil No. 18-935 (DWF/LIB)

          Plaintiff,

v.  **MEMORANDUM OPINION AND ORDER**

E.M.D.H., a minor, by and through her
parents and next friends, L.H. and S.D.,

          Defendants.

_____

Peter A. Martin, Esq., Knutson, Flynn & Deans, PA, counsel for Plaintiff.

Amy J. Goetz, Esq., and Andrea L. Jepsen, Esq., School Law Center, LLC, counsel for Defendants.

_____

**INTRODUCTION**

In this action, Independent School District No. 283 (the "District") requests judicial review of a March 16, 2018 decision (the "Decision") issued by an administrative law judge ("ALJ"). (Doc. Nos. 1, 2.) The Decision ruled in favor of the parents of a high-school student who lodged a due process complaint under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq*. ("IDEA"). The District seeks reversal of the ALJ's Decision and presently moves for a Temporary Restraining Order ("TRO") and Preliminary Injunction Staying Enforcement of Administrative Decision pending resolution of the current litigation. (Doc. Nos. 1, 6.) The District's motion is granted as set forth below.

## BACKGROUND

Defendants E.M.D.H. (the "Student"), a minor, by and through her parents and next friends, L.H and S.D. (the "Parents") (together "Defendants") assert that the Student, a sixteen-year old junior in high school, has been denied her right to a free and appropriate education under the IDEA. In short, Defendants submit that the Student went years without special education and related services because she was not properly classified as having a disability. The Parents hired a private educational team to design and implement an individualized education program. In June 2017, Defendants initiated an administrative hearing to correct the conditions and restore the Student's education.[1]

After a seven-day hearing, the ALJ issued the Decision, requiring Plaintiff to immediately change the Student's educational placement by providing her a free appropriate public education consisting of special education and related services, at public expense, until her graduation. The District then initiated the present action seeking judicial review of the Decision and to reverse the findings therein. The District presently seeks to stay the following portions of the Decision pending resolution of this action:[2]

---

[1] The facts relevant to the merits of the case are fully recited in the Decision. There does not appear to be a dispute as to the material facts, but rather Plaintiff challenges the legal conclusions reached by the ALJ. The Court will refer to facts as relevant in its discussion below.

[2] The School District represents that it seeks to stay the hearing officer's award of compensatory education, not the portion of the hearing decision that directly involves the Student's educational placement.

1. The requirement that the District reimburse the Parents $21,208.80 for costs associated with independent educational evaluations conducted by privately hired evaluators Dr. Read Sulik (the Student's treating psychiatrist), Dr. Richard Ziegler (a pediatric neuropsychologist), Wendy Selnes (a behavior analyst), and Heather Lindstrom (a special education teacher working for the Minnesota Department of Corrections with a side-business known as "Beyond Risk Youth");[3]

2. The requirement that the District reimburse the Parents $2,430 for the assessment conducted in May 2017 by Dr. Denise Reese, a private, licensed psychologist;

3. The requirement that the Student's IEP team meet at least quarterly following the implementation of the Student's initial IEP;

4. The requirement that Dr. Sulik and Lindstrom be invited to all quarterly IEP meetings and be reimbursed for their time participating in such meetings;

5. The requirement that the District reimburse the Parents for the cost of a private program provided by Lindstrom since January 5, 2018 and for future services;

6. The requirement that the Student's IEP include a placement in a "program identical" to the program currently provided by Lindstrom; and

---

[3] The Court previously stayed portions of the Decision pending a ruling on the present motion. (Doc. No. 19.)

   7. Any alleged requirement that a "program identical" to Lindstrom's program must also include involvement by Dr. Ziegler and Selnes in IEP meetings from now until the Student graduates.

On April 13, 2018, after this action and the present motion were filed, the District sent a proposed individualized education program ("IEP") to the Parents. On April 16, 2018, the Parents consented to the proposed IEP. (Doc. No. 38 ("Second Reynolds Decl.") ¶¶ 12, 15 & Ex. 1("IEP").) The IEP was implemented in response to the Decision, and services under the IEP are anticipated to begin the week of April 23, 2018. (Second Reynolds Decl. ¶ 15.) The IEP outlines the services to be provided the Student by fully-licensed District employees within the boundaries of the District. The District submits that it informed Defendants' outside providers that their contracted services were on hold pending the outcome of this action or that the District would be in contact if a contract for services became necessary. (*Id*. ¶¶ 13-14.)

## ANALYSIS

### I. The IDEA and the "Stay-Put" Rule

The IDEA codifies the goal that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d). In addition, the IDEA mandates that participating states extend various procedural protections and administrative safeguards to disabled children, parents, teachers, school officials, and educational institutions. 20 U.S.C. § 1415. For example, under the IDEA, parents are entitled to notice of proposed changes in their child's educational program and, where

disagreements arise, to an "impartial due process hearing." *Id*. § 1415(b)(2) & (f).  Once the available avenues of administrative review have been exhausted, aggrieved parties may file a civil action in state or federal court.  *Id*. § 1415(i)(2).

The IDEA also includes a "stay-put" provision, under which a disabled student "shall remain in the then-current educational placement of the child" during the pendency of any judicial review, unless "the State or local educational agency and the parents otherwise agree."  *Id*. § 1415(j).  The "stay-put" provision ensures an uninterrupted continuity of education for a disabled child pending any administrative or judicial review. *See Light v. Parkway C-2 Sch. Dist.*, 41 F.3d 1223, 1227 (8th Cir. 1994).  Further, the regulations implementing the IDEA provide:

> If the hearing officer in a due process hearing conducted by the SEA or a State review official in an administrative appeal agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents for purposes of [the general rule].

C.F.R. § 300.518(d).  *See also Lawrence Cty. Sch. Dist. v. McDaniel*, Civ. No. 17-4, 2017 WL 4843229, at *2  (E.D. Ark. Oct. 26, 2017) (explaining that a hearing officer's decision in favor of a student constitutes the student's "then-current" placement).

Defendants argue that the Student's "current educational placement" is that which is set forth in the Decision.  The District, however, argues that the injunctive relief sought does not implicate the "stay-put" provision because the District does not seek to change the Student's educational placement, but rather seeks to stay the expenditure of public money to pay private providers for both past and future services.  The District points out

that the parties have agreed to an IEP and that the portion of the Decision that directly involves the Student's educational placement is not subject to the stay.

The District has cited to authority that at least calls into question whether a challenge to an award of compensatory education, as opposed to the "then current educational placement," falls within the purview of the "stay-put" provision. *See, e.g.*, *Board of Educ. v. Maez*, Civ. No. 16-1082, 2017 WL 3610546, at *4 (D. N.M. 2017) ("There is some question as to whether the [stay-put] provision applies to compensatory education—or in this case, payment for *future* services."). Regardless of whether the "stay-put" provision applies to the provision of compensatory education, the "stay-put" provision can be overcome at the equitable discretion of a district court. *See Honig v. Doe*, 484 U.S. 305, 327-28 (1988). The "stay-put" rule was not intended to eliminate the availability of traditional injunctive relief. *See Board of Educ. v. Maez*, 2017 WL 3610546, at *3. Therefore the Court evaluates the District's request for injunctive relief below.

## II. The District's Request for Injunctive Relief

A movant must demonstrate circumstances that justify a stay pending judicial review, and as with other temporary injunctive relief, the Court weighs the following factors: (1) the threat of irreparable harm to the moving party; (2) the balance between the alleged irreparable harm and the harm that granting the injunction would inflict on the other party; (3) the public interest; and (4) the likelihood of the moving party's success on the merits. *See Dist. of Columbia v. Masucci*, 13 F. Supp. 3d 33, 39 (D.D.C. 2014); *see also Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). The

factors must be balanced to determine whether they tilt toward or away from granting injunctive relief.  *See West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986).

The Court has considered the parties' respective arguments made in their papers and during the hearing on this matter.  After careful consideration, the Court concludes that the District is entitled to a stay of portions of the Decision pending a final resolution of this lawsuit.  First, the Court concludes that the District has demonstrated irreparable harm.  Absent a stay, the District will be required to reimburse the Parents roughly $24,000 for past services provided by private evaluators and an assessment conducted by a private licensed psychologist.  In addition, the District will be required to reimburse the Parents for future costs for private professionals' participation in quarterly IEP meetings, as well as the cost of the private program provided by Lindstrom outside of the District.  The District has submitted evidence that the costs of these private services could total $175,000 to $200,000 in a single year.  (Doc. No. 16 ("Reynolds Decl.") ¶ 13.)  While financial harm is ordinarily reparable because it is compensable by monetary damages, the circumstances here support a contrary conclusion.  Without a stay, the District could be required to pay over $200,000 to cover both past and prospective private services.  Even with a multi-million dollar operating budget, this is not an insignificant amount of money, particularly because the District maintains that it is capable of providing these services using its own licensed and qualified special education staff.  (*Id.* ¶ 16.)

The District also argues that even if it ultimately prevails, there is no mechanism to recoup money spent to pay for private services.  The District has cited to several cases

7

supporting this contention. *See, e.g.*, *Masucci*, 13 F. Supp. 3d at 41 (holding that school district would be irreparably harmed absent a stay because the district would be unable to recoup costs paid for private tuition and related private services); *Board of Educ. v. Maez*, 2017 WL 3610546, at *6-8 (enjoining an order requiring $5,000 of private speech therapy for student because the district could not recoup the funds and because it would have to pay for duplicate services it could provide). While the Court does not necessarily agree with the notion that it could not order reimbursement of the funds, it concedes that it would be difficult to ask the Parents to reimburse the District for the costs of an ALJ's erroneous decision. *See Masucci*, 13 F. Supp. 3d at 41 (noting circuit court's statement that "[i]t would be absurd to imagine a trial court ordering parents to reimburse a school system for the costs of a hearing examiner's erroneous placement of their child"). The potential of not being able to recoup the costs, in combination with the fact that the District will be forced to pay a high amount for duplicate services that it can provide, tips this factor in favor of a stay.

Second, the Court concludes that the balance of the harms weighs in favor of a stay. For services already provided and paid for, a stay will delay reimbursement to the Parents for several months. This delay is not irreparable. In addition, the Court finds that any harm the Student will suffer if payment for prospective private services is stayed will be mitigated by the fact that the District can implement the Student's educational placement with their own staff. Importantly, the District points out that the ALJ did not conclude that the District was incapable of providing appropriate services. The potential

harm in requiring the District to pay for private services outweighs the potential harm to the Student and her Parents.

Third, the Court agrees with the District that the public interest is served by minimizing unnecessary expenditure of public funds and that any unnecessary expense will affect the District's ability to serve its student population at large.  The Court recognizes and acknowledges the public interest promoted by the IDEA.  However, it is not in the public interest to spend upwards of $200,000 in past and prospective costs to pay for private services when the District employs specialists who are licensed and qualified to provide those services to the Student.

Finally, Plaintiff argues that it is likely to succeed on the merits of its challenge to the Decision.  Defendants disagree and argue that the District is unlikely to prevail because the Decision is well-reasoned, presumptively correct, and entitled to deference. The Court concludes that this particular factor weighs slightly in favor of injunctive relief.  The merits of this case are complex and the record is voluminous, making a full analysis of the merits more properly addressed at a later stage of litigation.  However, even at this early stage, the District's challenges to the Decision have merit in that they have raised substantial questions regarding the propriety of ALJ's order, and that those questions call for a more deliberate investigation.  Specifically, the District argues that the ALJ erred in ordering reimbursement of outside professionals hired by the Parents because the underlying conclusions supporting the ALJ's order on reimbursement were erroneous.  For example, the District explains that it did not conduct required classroom observations because the Student was at home nearly every day and rarely attended

school, and that the absence of classroom observations and a functional behavior analysis were harmless because the Student did not meet the other eligibility criteria.[4]  In addition, the District argues that the ALJ exceeded his authority by ordering, as compensatory education, the District to pay for private consultation and future services because there was no evidence that the District staff are incapable of providing the mandated services.

The Court declines to make any definitive finding as to the likelihood of success on the merits, except to note that the District's arguments have significant merit and deserve additional and thorough consideration.  Even without a finding of a strong likelihood of success on the merits, the Court concludes that a temporary stay is warranted because the factors of irreparable harm, public interest, and balance of the harms all weigh heavily in favor of a stay.[5]  On balance, the Court concludes that equitable considerations favor an injunction.

## CONCLUSION

The Court grants the District's motion and temporarily stays the enforcement of the Decision insofar as it imposes any requirement on the District to expend public funds

---

[4]   The District evaluated the Student, but found no eligibility, for possible special eligibility in Autism Spectrum Disorder ("ASD"), Emotional and Behavioral Disorder ("EBD"), and Other Health Disability ("OHD"), and within the OHD category, evaluated the Student for ADHD and Generalized Anxiety Disorder.

[5]   The Eighth Circuit has explained that the "equitable nature of the proceeding mandates that the court's approach be flexible" and has rejected "an effort to apply the probability [of success] language to all cases with mathematical precision." *Dataphase Sys., Inc.*, 640 F.2d at 113.  Thus, "where the balance of other factors tips decidedly toward plaintiff a preliminary injunction may issue if movant has raised questions so serious and difficult as to call for more deliberate investigation." *Id.*  Such is the case here.

to pay for past or future private services.  Of course, the Parents are free to continue to contract with private providers and could seek reimbursement should they prevail in this lawsuit.  Hopefully, the implementation of the IEP and the resulting services provided by the District will meet the Student's educational needs.  In addition, the Court believes that it is in the bests interests of the parties to resolve this case quickly.  Consistent with the Court's remarks at the hearing, the parties are directed to contact Magistrate Judge Brisbois' chambers to set a date for a scheduling conference with priority.  The Court also commits to giving this matter calendar priority.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The District's Motion for a Temporary Restraining Order and Preliminary Injunction Staying Enforcement of Administrative Decision (Doc. No. [6])) is **GRANTED** as to the following provisions:

    a. The requirement that the District reimburse the Parents $21,208.80 for costs associated with independent educational evaluations conducted by privately hired evaluators Dr. Read Sulik, Dr. Richard Ziegler, Wendy Selnes, and Heather Lindstrom;

    b. The requirement that the District reimburse the Parents $2,430 for the assessment conducted in May 2017 by Dr. Denise Reese;

      c.      The requirement that Dr. Sulik and Lindstrom be invited to all quarterly IEP meetings and be reimbursed for their time participating in such meetings;

      d.      The requirement that the District reimburse the Parents for the cost of a private program provided by Lindstrom since January 5, 2018 and for future services;

      e.      The requirement that the Student's IEP include a placement in a "program identical" to the program currently provided by Lindstrom; and

      f.      Any alleged requirement that a "program identical" to Lindstrom's program must also include involvement by Dr. Ziegler and Selnes in IEP meetings from now until the Student graduates.

Dated: April 25, 2018                  s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            United States District Judge