UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Independent School District No. 283,            Civil No. 18-935 (DWF/ECW)

           Plaintiff,

v.                                                                               **ORDER**

E.M.D.H., a minor, by and through her
parents and next friends, L.H. and S.D.,

           Defendants.

This action involves Plaintiff's (the "District") request for judicial review of a March 16, 2018 decision issued by an administrative law judge (the "ALJ Decision").[1] The ALJ Decision ruled in favor of the parents ("Parents") of a high-school student (E.M.D.H.) who, by and through her Parents, lodged a due process complaint under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq*. ("IDEA"). In a January 15, 2019 Order, the Court denied the District's Motion for Judgment on the Administrative Record and granted in part Defendants' Motion for Judgment on the Record, as modified. (Doc. No. 116.) The parties cross-appealed to the Eighth Circuit Court of Appeals. (Doc. No. 118.) The Eighth Circuit affirmed in part, reversed in part, and reinstated the ALJ's award for compensatory education. *Indep. Sch. Dist. No. 283 v. E.M.D.H.,* 960 F.3d 1073 (8th Cir. 2020). After additional submissions by the parties, the Court granted in part the Defendant's entry of judgment. (Doc. No. 149.) The Court

---

[1]      The factual and procedural background of this case has been laid out in great detail in prior orders.

subsequently ordered the parties to submit additional briefing as to the scope and amount of the monetary judgment for prospective private services. (Doc. No. 155.)

Defendants argue that the ALJ ordered that private services arranged by E.M.D.H.'s Parents during the course of the administrative hearing should continue and increase in cooperation with E.M.D.H.'s individualized education plan ("IEP") team, but that such cooperation or increase has not occurred. Instead, in April 2018, four independent educational evaluators collaborated to design a starting point for a private compensatory education program for E.M.D.H. and the initial program was updated by the same consultants and led by Heather Lindstrom Olson, PhD ("Lindstrom"). Defendants refer to their proposed program as the Private Compensatory Education Program ("PCEP"). Defendants further submit that the amount of anticipated costs to develop and implement the PCEP is based on an average of the District's own calculation of the cost of the original private compensatory education plan ($175,000-$200,000 per year) for three years. Defendants argue that its proposed PCEP is consistent with the administrative record, the plan ordered by the ALJ and affirmed by the Eighth Circuit, the IDEA, the equitable authority of the Court, and related decisions interpreting the IDEA. Defendants further submit that the proposed PCEP was designed to provide E.M.D.H. with an individually tailored private transition program of special education and related services to develop functional skills she needed during the period covered by the private compensatory education remedy and that she continued to need from 2018 to date. In particular, Defendants point out that the ALJ originally ordered the District to fund an evolving PCEP updated as needed until E.M.D.H. graduates and submit that there is no

doubt that the private compensatory education program must focus on helping E.M.D.H. access and complete curriculum, earn credits, and graduate from high school. Defendants also maintain that prospective compensatory private services are appropriate. In that vein, Defendants argue that E.M.D.H. is eligible for and needs transition-focused IEP services, compensatory transition services and functional skills, and residential placement. The total cost of the proposed components of Defendants' requested award including interest is $838,689.16. In addition, Defendants request that $75,945.31 (representing a partial award of prevailing party fees and costs plus interest) be awarded.

The District argues that the scope and amount of remedies requested by Defendants should be substantially reduced. The District maintains that the Parents are not entitled to a cash windfall based on the estimated value of prospective private services that the District was not obligated to provide or were not provided. The District notes that neither the ALJ's decision nor the Eighth Circuit's opinion mentions the award of a monetary judgment for the value of prospective private services and that the claimed amount for such services ($562,500) was manufactured out of whole cloth based on various erroneous conclusions. As to Defendants revised amount requested for its proposed PCEP, the District contends the amount was based on a calculation "prepared in secret by persons who stand to gain financially as service providers." (Doc. No. 167 at 1.)

The District maintains that Defendants seek remedies that far exceed those set out in the ALJ's decision—and that no tribunal considering this case has determined that money is an appropriate form of compensatory education. For example, the District

argues that the ALJ's decision required the District to pay Lindstrom directly for services actually provided, but *not* that the District pay the Parents for Lindstrom's prospective services. The District points out that Defendants originally sought a prospective injunction providing placement in a private program and the Eighth Circuit focused on *services* to be provided. Moreover, the District asserts that the IDEA only authorizes reimbursement to parents who have actually incurred expenses in funding an appropriate special education where the court determines that a district's IEP was inappropriate, and further that the Minnesota Legislature has codified a description of compensatory educational services, and not a cash payout. Finally, the District points out that E.M.D.H.'s IEP Team arranged for other supports for E.M.D.H. and through the provision of direct support and the creation of a "Core Team" approach, E.M.D.H. has made significant progress. The District also shifted E.M.D.H. to an IEP-driven diploma, which it claims removed the need for Lindstrom to meet with E.M.D.H. to facilitate work. Thus, the District argues that the services provided by Lindstrom were no longer necessary or appropriate and, therefore, the District is not required to pay for such services. Separately, the District argues that the proposed PCEP has many deficiencies, one being that it undermines the cooperative process required by the IDEA.

It is apparent that the parties still have significant differences to bridge as to the proper scope and amount of the remedies in this case. More unfortunately, E.M.D.H. has suffered because there has been no collaboration between the parties as required by the IDEA. The IDEA's procedural requirements for developing a student's IEP "emphasize collaboration among parents and educators and require careful consideration of the

4

child's individual circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 994 (2017). Sadly, as observed by the Eighth Circuit, "the record reflects that the District made no effort to assess the Student in her virtual classroom, at home, or in any one of the psychiatric facilities from which she earned school credits." *Indep. Sch. Dist. No. 283 v. E.M.D.H.*, 960 F.3d at 1080. And, as also observed by the Eighth Circuit:

> The Student is eligible for special education and a state-funded FAPE like every other "child with a disability." 20 U.S.C. § 1401(3). This "specially designed instruction," whether "conducted in the classroom, in the home, in hospitals and institutions, [or] in other settings," id. §1401(29), must be "reasonably calculated to enable [her] to make progress" and "appropriately ambitious in light of [her] circumstances," *Endrew F. ex rel. Joseph F.,* 137 S. Ct. at 999-1000.

(*Id*. at 1082.)

The best interests of the Student, and frankly speaking the best interests of all parties concerned including the parents and the School District, require everyone to come together to find a solution once and for all through agreement. This agreement should provide a path for E.M.D.H. to obtain credits, graduate, and transition to her post-secondary school life without indefinite and protracted litigation and appeals. Moreover, the Court believes that the proposed PCEP runs counter to the cooperative process required by the IDEA, is excessive, and may not be supportable. That said, the Court also believes that the District's position clearly falls short. The proper scope and amount

of remedies in this case falls somewhere in the middle of the parties' respective positions.[2]

Accordingly, the Court will deny (without prejudice) the pending motion for judgment (Doc. No. 162) and order the parties to engage jointly, with the assistance of the Magistrate Judge, in an effort to resolve the issue of an appropriate remedy in this case, including the good faith collaboration between the District and Parents as the law requires.[3] Justice and fairness require no less. Perhaps more importantly, the future and best interests of E.M.D.H. require no less.

Based on the above, **IT IS HEREBY ORDERED** that:

---

[2] It appears that there is no dispute that, at a minimum, Parents are entitled to $25,583.19. (*See* Doc. No. 159 at 14-15.) The Eighth Circuit stated that "the costs incurred as the result of Dr. Reese's work and that of other professionals hired by the Parents would have been unnecessary but for the District's failure to timely identify and properly evaluate the Student as a child in need of special education." *Indep. Sch. Dist. No. 283 v. E.M.D.H.*, 960 F.3d 1073 at 1084. Moreover, the Eighth Circuit stated that "[t]he administrative record supports the ALJ's conclusion that the services of the private tutor are appropriate until the student earns the credits expected of her same-aged peers. We therefore reinstate the ALJ's award of these services, to be provided only so long as the student suffers from a credit deficiency caused from the years she spent without a FAPE." *Id*. at 1085. Consequently, the Court hopes that, with or without the help of the Magistrate Judge, the parties can agree to expedite this payment while they work toward a broader resolution on the issue of a proper remedy.

[3] The Court realizes that the distance between the parties' respective positions is great. Should the parties be unable to reach an agreement, even after the help of the Magistrate Judge, the Court will be obligated to consider hiring a Rule 706 Expert to assist the parties, including an "IEP Team", to come up with an appropriate solution and IEP, which as all parties are aware is "the centerpiece of the statute's education delivery system . . ." *Endrew F. ex rel. Joseph F.*, 137 S. Ct. at 994 (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)).

1. Defendants' Motion for Judgment For Private Compensatory Education Program (Doc. No. [162]) is **DENIED** without prejudice to bring the motion again should mediation fail.

2. The parties are directed to contact the chambers of Magistrate Judge Elizabeth Cowan Wright to schedule mediation on the pending matter.

Dated: May 3, 2021				s/Donovan W. Frank
						DONOVAN W. FRANK
						United States District Judge